IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | S U P E R S E D I N G |
| | ) | I N D I C T M E N T |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:18CR246 |
| | ) | |
| AARON REELS, | ) | JUDGE BENITA Y. PEARSON |
| DONNELL BELL, | ) | |
| HENRY WILLIAMS, | ) | Title 21, Sections 841(a)(1), (b)(1)(A), |
| WILLIAM WHEAT JR., | ) | (b)(1)(B), (b)(1)(C), 843(b), and 846, United |
| ANDRE THOMPSON, | ) | States Code; Title 18, Section 853, United |
| OTHA SHORT, | ) | States Code |
| CARL MILECA, | ) | |
| | ) | |
| Defendants. | ) | |

COUNT 1
(Conspiracy to Possess with Intent to Distribute, and to Distribute Controlled Substances, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), (b)(1)(B), (b)(1)(C), and 846)

The Grand Jury charges:

1. From on or about September 1, 2017, to on or about April 24, 2018, the exact dates to the Grand Jury known and unknown, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendants AARON REELS, ANDRE THOMPSON, CARL MILECA, DONNELL BELL, OTHA SHORT, HENRY WILLIAMS, and WILLIAM WHEAT JR., "Defendants," and others known and unknown to the Grand Jury did knowingly and intentionally combine, conspire, confederate, and agreed together and with each other, and with diverse others known and unknown to the Grand Jury, to possess with intent to distribute and to distribute a mixture or substance containing a detectable amount of cocaine, heroin, carfentanil, and fentanyl.

2. Defendants AARON REELS, ANDRE THOMPSON, DONNELL BELL, and OTHA SHORT did knowingly and intentionally, combine, conspire, confederate, and agree together and with each other, and with diverse others known and unknown to the Grand Jury, to possess with intent to distribute, and to distribute at least 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A).

3. Defendants AARON REELS, HENRY WILLIAMS, WILLIAM WHEAT, JR., and CARL MILECA did knowingly and intentionally, combine, conspire, confederate, and agree together and with each other, and with diverse others known and unknown to the Grand Jury, to possess with intent to distribute, and to distribute at least 100 grams or more of a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, and 40 grams or more of fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B).

4. Defendant AARON REELS did knowingly and intentionally, combine, conspire, confederate, and agree together and with each other, and with diverse others known and unknown to the Grand Jury, to possess with intent to distribute, and to distribute a mixture or substance containing a detectable amount of carfentanil, a Schedule II controlled substance, all in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

## MANNER AND MEANS OF THE CONSPIRACY

5. It was part of the conspiracy that:

    a. BELL, WHEAT JR., WILLIAMS, and others, sold drugs to REELS.

    b. REELS redistributed drugs for profit to MILECA, THOMPSON, SHORT, and others.

  c. REELS provided MILECA with samples of various drugs for MILECA to sample and report back on the quality of the mixture, which MILECA did.

  d. Conspirators, including but not limited to REELS and BELL, used numerous vehicles, including rental cars, for the purpose of transporting narcotics without law enforcement detection.

  e. Conspirators REELS, BELL, and others, used homes located in the city of Cleveland, and elsewhere, to store and distribute narcotics and narcotics proceeds.

  f. Conspirators REELS, BELL, SHORT, THOMPSON, WHEAT, JR., WILLIAMS and others, used telephones, in particular multiple prepaid cellular telephones, to communicate with narcotics customers, and changed phones frequently.

  g. It was further part of the conspiracy that co-conspirators used cellular telephones to make and receive telephone calls, and to send and receive text or other electronic messages, to conduct their drug trafficking activity. To reduce the risk of being detected by law enforcement, and to conceal the identity of the person using the device, co-conspirators often used cellular telephones that had been obtained in the names of other persons or in fictitious names. It was further part of the conspiracy that co-conspirators, when using cellular phones or text messaging to conduct drug trafficking activity, used slang terms, street terminology, or code words or phrases to obscure and to disguise the true nature of their activities, and the true meaning of their conversations.

  h. REELS sold controlled substances to a confidential source.

  i. All Defendants, co-conspirators, and customers used coded language to purchase and distribute narcotics.

## ACTS IN FURTHERANCE OF THE CONSPIRACY

6. In furtherance thereof, and to effect the goals and conceal the existence of the conspiracy, Defendants and others performed overt acts in the Northern District of Ohio and elsewhere, including but not limited to the following:

7. On or about October 3, 2017, REELS "fronted," or advanced a confidential source approximately .53 grams of a mixture or substance containing heroin and fentanyl.

8. On or about October 5, 2017, REELS sold approximately 10.05 grams of a mixture of heroin and fentanyl to a confidential source for $760.00 at the YMCA, located at 15501 Lorain Road, Cleveland, Ohio.

9. On or about October 19, 2017, REELS sold approximately 9.93 grams of a mixture of heroin, fentanyl and carfentanil to CS-1 for $760.00 in the Kmart parking lot, located at 14901 Lorain Road, Cleveland, Ohio.

10. On or about November 3, 2017, REELS sold approximately 27.91 grams of a mixture of cocaine, heroin, and fentanyl to a confidential source for $2,100.00 in the YMCA parking lot, located at 15501 Lorain Road, Cleveland, Ohio.

11. On or about November 29, 2017, REELS sold approximately 28.03 grams of a mixture of heroin and fentanyl to a confidential source for $2,100.00 in the parking lot of Rubin's Family Restaurant, located at 14651 Lorain Road, Cleveland, Ohio. During the drug transaction, REELS showed the source approximately two kilograms of suspected cocaine. REELS then left the source and met with separately charged defendants Michael Rivera and Trent Schultz, and sold Rivera approximately 497.2 grams cocaine at the Circle K, located at 13951 Triskett Road, Cleveland, Ohio.

12. On or about December 19, 2017, REELS sold approximately 27.62 grams of a mixture of heroin and cocaine to a confidential source for $2,100.00 in the Kmart parking lot, located at 14901 Lorain Road, Cleveland, Ohio.

13. On or about January 12, 2018, at approximately 6:42 p.m., REELS called SHORT. During the call, SHORT said, "I needed some help, man. I ain't got but a stack ($100)…I'm short fifty (dollars)." REELS said, "Are you going to give it to me the next time?"

14. On or about January 16, 2018, at approximately 6:57 p.m., REELS called MILECA. During the call, MILECA stated, "I got forty-five (45 dollars). Mike's brother didn't have the five (5) …" REELS replied, "Hey look, I'mma tell you right here, man. I'm leaving out of my house, going to go get it. I'm not going to be going and doing… I can't be doing… I'mma do it this time, alright? I don't want to be whipping and running for no mother*^king forty five dollars, man. So I'mma do it this time but if you ain't got sixty (dollars) or I can break it in half, I ain't stopping what I'm doing to go do that, man."

15. On or about January 18, 2018, at approximately 2:04 p.m., REELS called MILECA. During the call, MILECA told REELS, "I got that 50 (quantity of money) so…" REELS responded, "Okay, I'm a call you in a minute." At approximately 3:16 p.m., REELS called MILECA and told him to "go to the Staples." MILECA agreed to meet him. Shortly after the call, at approximately 3:24 p.m., REELS exchanged narcotics with MILECA.

16. On or about January 19, 2018, at approximately 4:43 p.m., SHORT called REELS. During the call, SHORT told him, "I got eight (quantity of drugs)." REELS responded, "The deal, oh okay." SHORT told him, "I owed you fifty-seven (dollars)." REELS then told him to "go to the hum…Popeye's."

17. On or about January 24, 2018, at approximately 8:05 a.m., REELS made an outgoing call to WILLIAMS. During the call, REELS said, "Been seeing me calling you, man?" WILLIAMS asked "…What's up with you…s*^t I'm hoping real soon, bro." REELS asked, "Ain't nothing?" WILLIAMS said, "I mean yea, but not, not, not, not the ones your boy like." REELS asked, "What the, what is it?" WILLIAMS then told REELS, after he dropped his kids off, he could "bump it to you (bring the drugs to REELS)."

18. On or about January 24, 2018, at approximately 10:56 a.m., REELS received an incoming call from WILLIAMS. During the call, REELS attempted to meet up with WILLIAMS. WILLIAMS directed him to "slide through." REELS asked, "What it like? Like I got it from (U/I) last time? Remember he got the uh…you know? He, he, he got the regular regular." WILLIAMS responded, "Uh, uh…not exactly like that but…" REELS said, "Oh, it already, it already been played with a little bit (cut the narcotics to dilute the drugs and stretch the quantity)." WILLIAMS said, "I mean, kind of that way but…you know?" REELS asked, "You ain't got none that regular way (uncut)?" WILLIAMS said, "Nope, I, I will though. That's why I said like a little later…" REELS said, "Okay, that's what I'm trying to do. I need it, like, my way."

19. On or about January 25, 2018, at approximately 1:08 p.m., REELS called BELL. During the call, BELL told REELS, "Something (drugs) came through." REELS said, "S*^t. Huh?" BELL said, "Something came through." REELS asked, "What it look like…what's the ticket?" BELL said, "It's a nickel more ($500 more per kilogram of cocaine), though." REELS said, "What? I thought you said they (the supplier) went down. You went up?" BELL said, "It's somebody different (a different supplier)." REELS asked, "Well what was it before?" BELL said "Three, two ($32,000)." REELS then said, "I think I want to get a 9-pack or

6

something (nine ounces of cocaine). I'm a call, I think somebody else want to get one....I think I want to get a 9-pack (nine ounces of cocaine) for myself but I know somebody else want to get one, too, or a few. There's some people though. Can we do it like that?" BELL said "Yeah."

20. On or about January 27, 2018, at approximately 9:55 p.m., REELS spoke to THOMPSON on the phone. During the call, THOMPSON asked REELS, "What they going for man...you know, the whole car." REELS asked, "The whole, what you mean? The whole, whole, whole, whole thing? I probably can get it for 'bout uh, maybe thirty-five (35) ($35,000), I think, and they got it too. They only got like one (1) or two (2) (kilograms of cocaine) though." THOMPSON said, "I'm just sayin'. I came across some and I'm just making sure the price is right. That's why I asked you what its going."

21. On or about January 27, 2018, at approximately 9:57 p.m., REELS and THOMPSON again spoke on the phone. REELS explained, "You ain't gonna be able to do nothing but single sales. What if somebody wanna just buy the whole thing (one full kilogram of cocaine) and keep going? I know, my dude selling it for right now thirty-two, five ($32,500), but really thirty-two. But if you catch a mother*^cker out there you can get thirty-five is what I'm sayin' though but you shouldn't be getting it for that and then trying to sell it...if you selling it for thirty-two (thousand dollars) you should be getting it for like thirty (thousand)....Make a quick two thousand dollars."

22. On or about January 31, 2018, REELS sold approximately 110.92 grams of suspected cocaine to a confidential source for $4,400.00 at the Chipotle parking lot, located at 16729 Lorain Avenue, Cleveland, Ohio.

23. On or about January 31, 2018, at approximately 3:08 p.m., REELS received an incoming call from SHORT. During the conversation, SHORT told REELS, "Uh, s*^t I got

uh…I'm finna play that number. That seven fifty (750) (purchase a quantity of drugs)." REELS asked if he was going to "come right now?" SHORT responded, "Yeah." REELS instructed him to "come to the Popeyes." At approximately 3:36 p.m., REELS arrived at Popeye's in Cleveland and met up with SHORT in person, whereby REELS sold SHORT a quantity of cocaine.

24. On or about February 1, 2018, at approximately 8:44 p.m., REELS called THOMPSON. During the conversation, THOMPSON asked REELS, "Can you uh…bring me one (1) (one ounce of drugs)?" REELS said, "Uh, where you at?" The two agreed to meet at Slim and Chubby's Bar and Grill, located at 15024 Puritas Avenue, Cleveland, Ohio. THOMPSON and REELS met at the bar where THOMPSON purchased an ounce of cocaine from REELS.

25. On or about February 1, 2018, at approximately 6:22 p.m., REELS spoke with separately charged defendant Michael Rivera. During the conversation, Rivera ordered nine ounces of cocaine from REELS. The two agreed on the phone to meet the following day to complete the sale.

26. On or about February 2, 2018, at approximately 11:53 a.m., MILECA called REELS. During the call, MILECA said, "Hey, I got sixty (dollars). Can I get it?" REELS said he would call him right back. At approximately 12:32 p.m., REELS called MILECA and told him to meet at Marc's on Loraine.

27. On or about February 2, 2018, at approximately 12:23 p.m., REELS spoke with BELL. During the conversation, BELL asked "Did you still want to get together around two (2:00 p.m.)?" REELS responded, "Yeah." Later in the conversation, REELS said "I'm a hit you up a, I'm a need extra one (1) (one ounce of cocaine) too. Outside of that, that nine (9) (nine ounces of cocaine)." The two agreed to meet at T.G.I. Friday's in Brooklyn, Ohio. At

approximately 12:27 p.m., REELS and BELL had another telephone conversation. During the call, REELS confirmed by saying, "I want the 9 and I want the 1 to the side." BELL said, "Alright." At approximately 1:12 p.m., REELS and BELL met at the T.G.I. Friday's, where BELL sold REELS ten ounces of cocaine.

28. On or about February 2, 2018, at approximately 1:44 p.m., REELS had a telephone conversation with separately charged defendant Michael Rivera. During the call, REELS told Rivera "…I got it, man." Later the same day, REELS supplied Rivera a quantity of cocaine.

29. On or about February 2, 2018, at approximately 6:16 p.m., REELS called BELL on the phone. During the call, BELL asked, "You coming back out tonight or what?" REELS replied, "Yea, um, I probably wanna grab another ounce and a half (of cocaine)." BELL said, "Alright I'll bring it with me." REELS complained to BELL about his bags of cocaine being short the agreed-upon amount. REELS said, "It's got to be on, if you got it in a bag, and you weigh it, it's gotta be on 29 (grams). I weigh that bag, the bag weigh a gram itself." BELL explained, "I put them on 27 … without the bag. I don't put 'em on 28 (grams) even." REELS asked, "How can you sell 'em for an ounce then?" BELL explained, "That's how I cut, man. I got to balance it out, man, or I'mma be losing in the end."

30. On or about February 8, 2018, at approximately 6:27 p.m., REELS called THOMPSON. During the call, THOMPSON asked, "Where do you wanna…see me at?" REELS asked, "What you got going on?" THOMPSON said, "Just one (ounce of cocaine)." REELS then told him, "Okay, it'll take me, give me about half an hour."

31. On or about February 9, 2018, at approximately 10:41 a.m., REELS called MILECA on the phone. During the call, MILECA stated, "You know, um, what's his name, um,

Bryan?" REELS said, "Yea, what about him?" MILECA said, "And he wants, he can get like four halves....He's sick." REELS asked, "He start back using again?" MILECA said, "Yea. He's got cancer. He's on oxygen....He wanted something then (yesterday). You know, he wanted something now. He wants four halves. He's got the money." REELS asked, "Do it have to be halves or you just, or do he want just two grams of the same thing?" MILECA stated, "Yea same thing. He's going to give me one half though."

32. On or about February 9, 2018, at approximately 4:58 p.m., REELS called THOMPSON on the phone. During the call, THOMPSON asked REELS for "the one (one ounce of cocaine)."

33. On or about February 16, 2018, at approximately 1:43 p.m., REELS texted BELL, "9 Chunky (9 ounces of cocaine)." BELL responded, "Im ready now."

34. On or about February 16, 2018, at approximately 1:57 p.m., BELL and REELS spoke on the phone. During the call, REELS asked, "Is it chunky (cocaine)?" BELL responded, "Yup." Shortly thereafter, BELL and REELS met in the parking lot of Planet of the Vapes, 4200 West 130th Street, Cleveland, Ohio, where BELL sold REELS approximately 9 ounces of cocaine. Just after the meeting, REELS texted BELL and told him BELL was "3.5 short (the 9 ounces were missing 3.5 grams)." BELL responded, "Ok."

35. On or about February 16, 2018, at approximately 4:35 p.m., REELS called MILECA. During the call, MILECA told REELS, "It (the drugs REELS provided) ain't as good as your other stuff, it's got cut (diluting ingredients)…" REELS asked, "Did it get you high?" MILECA said, "I'm still not just, it seems as it fade me out a little bit, but nothing like it should of…it won't draw up (the drugs will not go into a syringe properly)."

36.     On or about February 20, 2018, at approximately 3:25 p.m., REELS made an outgoing call to MILECA. During the call, REELS asked MILECA, "You had anything yet?" MILECA responded, "Not today." REELS said, "I was trying to give you something to test real quick."

37.     On or about February 20, 2018, at approximately 4:32 p.m., REELS received a call from MILECA. During the call, MILECA stated, "Yea, uh, how about an eight." REELS said, "It's pretty good, ain't it?" MILECA said, "Yea it passed. I don't know… I'm trying to pick up your other stuff is better or…I don't know. I done quite a bit of this so….I'd give it an eight. The way I feel now is just…I mean I feel pretty good now." REELS asked, "Did it have cut in it?" MILECA responded, "Had a little bit not that much you know?"

38.     On or about February 22, 2018, at approximately 11:11 a.m., REELS made an outgoing call to WILLIAMS.  During the call, REELS asked "Ain't never (u/i) yet?" WILLIAMS responded, "Not on your, not (stammers) on you one dude side." REELS said "Damn." WILLIAMS continued, "Not on your dude side, but you know, I'm hoping real, real soon."

39.     On or about February 26, 2018, at approximately 9:45 p.m., REELS called MILECA.  During the call, REELS told him, "I have something for you."  Later in the night, REELS and MILECA met up at Slim and Chubby's Bar and Grill.  After the two met, they had another telephone conversation.  During the call, REELS asked MILECA, "How was that?" MILECA responded, "Good, I liked it." REELS then asked, "Was it better than that brown shit I gave you?" MILECA said, "I think so." REELS then said, "The brown stuff you said it was a six (6) or a seven (7) (out of ten, referring to the quality of the sample REELS provided MILECA)." MILECA responded, "Know what you talkin' bout. Nah I said, yeah that's more a seven (7)."

11

40. On or about February 27, 2018, at approximately 1:06 p.m., REELS called WILLIAMS, who stated, "…But man, they said that was a zero." REELS replied, "They said what?" WILLIAMS replied, "They said that was bad…weak, real weak."

41. On or about February 27, 2018, at approximately 10:43 p.m., REELS called WHEAT. During the call, REELS asked, "What you got, something slick going on?" Later in the conversation, WHEAT told REELS, "I came across something that you know, in the field, in your field." REELS asked, "How is it?" WHEAT said, "You tell me." REELS asked, "It ain't been played around with (cut, or diluted), have it?" WHEAT responded, "I don't play around with nothing." REELS then told him he would call him tomorrow around 11:00 a.m.

42. On or about February 28, 2018, at approximately 10:55 a.m., REELS called WHEAT, and the two agreed to meet at the Circle K, located at 13951 Triskett Road, Cleveland, Ohio 44111. REELS and WHEAT later met at the Circle K, where REELS purchased a quantity of drugs.

43. On or about February 28, 2018, at approximately 11:33 a.m., REELS called MILECA. REELS asked him to meet at the Giant Eagle on West 117th. REELS told him, "I got something…I want you to check out." MILECA agreed to meet him.

44. On or about February 28, 2018, at approximately 12:14 p.m., MILECA called REELS and told REELS "It's just below, hum…you know what you gave me yesterday…yeah, it's good, I'm not saying it's bad, it's good….it's just below that stuff yesterday." MILECA continued to tell him "I liked it better yesterday because uh...I felt it." REELS asked, "Does it got any cut in it?" MILECA said, "No, it's clean."

45. On or about February 28, 2018, at approximately 5:06 p.m., REELS received a call from BELL, who stated, "I got this last one (ounce of cocaine), but I got somebody else

calling me. What you want to do?" REELS said, "I'm coming. I'm just gonna come get it and I'll give you the money a little later or whatever."

46. On or about March 1, 2018, at approximately 4:01 p.m., REELS called WILLIAMS. During the conversation REELS asked, "How much does fentanyl go for a gram?" WILLIAMS asked "Huh." REELS said, "The fetty, how much that go for a gram?" WILLIAMS asked "For you…for $65." REELS asked, "So $100 too much, ain't it?" Later in the conversation, REELS told WILLIAMS, "I wanna grab some and put some and make it do it and go from there." WILLIAMS said, "Oh, I don't know we have to bump into each other and see what's going on….we have to go down there. You feel me?"

47. On or about April 24, 2018, REELS possessed the following drugs in approximate weights: 319.65 grams of heroin, 200.48 grams of a mixture or heroin and fentanyl, and 138.58 grams of cocaine.

All in violation of Title 21, United States Code, Section 846.

COUNT 2
(Possession with Intent to Distribute Heroin and Fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C))

The Grand Jury further charges:

48. On or about October 3, 2017, in the Northern District of Ohio, Eastern Division, Defendant AARON REELS did knowingly and intentionally possess with intent to distribute approximately .53 grams of a mixture or substance containing heroin, a Schedule I controlled substance, and fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

COUNT 3<br>
(Possession with Intent to Distribute Heroin and Fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C))

The Grand Jury further charges:

49.     On or about October 5, 2017, in the Northern District of Ohio, Eastern Division, Defendant AARON REELS did knowingly and intentionally possess with intent to distribute approximately 10.05 grams of a mixture or substance containing heroin, a Schedule I controlled substance, and fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

COUNT 4<br>
(Possession with Intent to Distribute Heroin, Carfentanil, and Fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C))

The Grand Jury further charges:

50.     On or about October 19, 2017, in the Northern District of Ohio, Eastern Division, Defendant AARON REELS did knowingly and intentionally possess with intent to distribute approximately 9.93 grams of a mixture or substance containing heroin and carfentanil, Schedule I controlled substances, and fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

COUNT 5<br>
(Possession with Intent to Distribute Heroin, Fentanyl, and Cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C))

The Grand Jury further charges:

51.     On or about November 3, 2017, in the Northern District of Ohio, Eastern Division, Defendant AARON REELS did knowingly and intentionally possess with intent to distribute approximately 27.91 grams of a mixture or substance containing heroin, a Schedule I

controlled substance, and fentanyl and cocaine, Schedule II controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

COUNT 6
(Possession with Intent to Distribute Heroin and Fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C))

The Grand Jury further charges:

52. On or about November 29, 2017, in the Northern District of Ohio, Eastern Division, Defendant AARON REELS did knowingly and intentionally possess with intent to distribute approximately 28.03 grams of a mixture or substance containing heroin, a Schedule I controlled substance, and fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

COUNT 7
(Possession with Intent to Distribute Cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C))

The Grand Jury further charges:

53. On or about November 29, 2017, in the Northern District of Ohio, Eastern Division, Defendant AARON REELS did knowingly and intentionally possess with intent to distribute approximately 497.2 grams of a mixture or substance containing cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

COUNT 8
(Possession with Intent to Distribute Cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C))

The Grand Jury further charges:

54. On or about December 19, 2017, in the Northern District of Ohio, Eastern Division, Defendant AARON REELS did knowingly and intentionally possess with intent to

distribute approximately 27.62 grams of a mixture or substance containing cocaine, a Schedule II controlled substance, and heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

## COUNT 9
(Possession with Intent to Distribute Cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C))

The Grand Jury further charges:

55. On or about January 31, 2018 in the Northern District of Ohio, Eastern Division, Defendant AARON REELS did knowingly and intentionally possess with intent to distribute approximately 110.92 grams of a mixture or substance containing cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

## COUNT 10
(Possession with Intent to Distribute Heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B))

The Grand Jury further charges:

56. On or about April 24, 2018, in the Northern District of Ohio, Eastern Division, Defendant AARON REELS did knowingly and intentionally possess with intent to distribute approximately 319.65 grams of a mixture or substance containing heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B).

## COUNT 11
(Possession with Intent to Distribute Heroin and Fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B))

The Grand Jury further charges:

57. On or about April 24, 2018, in the Northern District of Ohio, Eastern Division, Defendant AARON REELS did knowingly and intentionally possess with intent to distribute

approximately 200.48 grams of a mixture or substance containing heroin, a Schedule I controlled substance, and fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B).

## COUNT 12
(Possession with Intent to Distribute Cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C))

The Grand Jury further charges:

58. On or about April 24, 2018, in the Northern District of Ohio, Eastern Division, Defendant AARON REELS did knowingly and intentionally possess with intent to distribute approximately 138.58 grams of a mixture or substance containing cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

## COUNTS 13-18
(Use of a Communication Facility in Furtherance of a Drug Trafficking Crime, in violation of 21 U.S.C. § 843(b))

The Grand Jury further charges:

59. On or about the dates and approximate times listed below, in the Northern District of Ohio, and elsewhere, Defendants listed below did knowingly and intentionally use a communication facility, to wit: a telephone, to facilitate acts constituting a felony, under Title 21, United Stated Code, Section 846:

| Count | Defendants | Date | Time |
| --- | --- | --- | --- |
| 13 | AARON REELS<br>HENRY WILLIAMS | January 24, 2018 | 8:05 a.m. |
| 14 | AARON REELS<br>OTHA SHORT | January 19, 2018 | 4:43 p.m. |
| 15 | AARON REELS<br>ANDRE THOMPSON | January 27, 2018 | 9:55 p.m. |
| 16 | AARON REELS<br>CARL MILECA | February 9, 2018 | 10:41 a.m. |
| 17 | AARON REELS | February 16, 2018 | 1:57 p.m. |

| | | | |
|---|---|---|---|
| | DONNELL BELL | | |
| 18 | AARON REELS | February 27, 2018 | 10:43 p.m. |
| | WILLIAM WHEAT, JR. | | |

All in violation of Title 21, United Stated Code, Section 843(b).

## FORFEITURE

The Grand Jury further Charges:

60. The allegations of Counts 1-18, inclusive are hereby realleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to Title 21, United States Code, Section 853. As a result of the forgoing offenses, Defendants AARON REELS, DONNELL BELL, HENRY WILLIAMS, WILLIAM WHEAT, JR., ANDRE THOMPSON, OTHA SHORT, and CARL MILECA shall forfeit to the United States any and all property constituting or derived from any proceeds they obtained directly or indirectly as a result of the said violations; and, any and all of their property used or intended to be used in any manner or part to commit or to facilitate the commission of the said violations.

A TRUE BILL.

Original document - Signatures on file with the Clerk of Courts, pursuant to the E-Government Act of 2002.